IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| GENESYS SOFTWARE SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> CERIDIAN CORPORATION, CERIDIAN HCM, INC., CSIG MANAGEMENT, INC., and WILLIAM SNYDER, <br><br> Defendants. | CIVIL ACTION FILE <br><br> NO. 1:14-CV-2658-MHC |

## ORDER

This case comes before the Court on Defendants Ceridian Corporation, Ceridian HCM, Inc., CSIG Management, Inc., and William Snyder's (collectively, "Defendants") Motion for Summary Judgment [Doc. 27].

I. BACKGROUND[1]

---

[1] At the outset, the Court notes that it views the evidence presented by the parties in the light most favorable to Plaintiff, the non-movant. Matshushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Sunbeam TV Corp. v. Nielsen Media Research, Inc., 711 F.3d 1264, 1270 (11th Cir. 2013). In addition, the Court has excluded assertions of facts by either party that are immaterial or presented as arguments or legal conclusions or any fact not supported by citation to evidence (including page or paragraph number). LR 56.1B(1), NDGa. Further, the

Plaintiff Genesys Software Systems, Inc. ("Genesys") is a software company that licenses human resources management software for managing payroll and related services. Compl. [Doc. 1] ¶ 11. Lands' End, Inc. ("Lands' End") was formerly licensed to use, and did use, human resource software provided by Genesys (the "Genesys software"). Defs.' SUMF ¶ 1. During 2012, Lands' End worked with Ceridian Corporation ("Ceridian") to transition from using the Genesys software to using human resource software provided by Ceridian. Id. ¶ 2. Lands' End operated the Genesys software on its mainframe computer, on which it stored extensive data about Lands' End employees over many years. Id. ¶ 3.

Lands' End communicated with Ceridian about its difficulties extracting data files and asked Ceridian to identify a consultant to assist them with data extraction. Id. ¶ 5. Ceridian identified CSIG Management, Inc. d/b/a iHouse ("iHouse") to perform the data extraction. Id. An independent contractor, David Fischer,[2] with whom iHouse had a relationship, traveled to Lands' End's office in Dodgeville, Wisconsin, where Lands' End provided him with access to its

---

Court accepts as admitted those facts in the parties' statements of material facts that have not been specifically controverted with citation to the relevant portions of the record. LR 56.1B(2), NDGa. See Defs.' Statement of Undisputed Material Facts [Doc. 27-3] ("Defs.' SUMF"); Pl.'s Resp. to Defs.' SUMF [Doc. 30-8].

[2] Fischer was voluntarily dismissed as a Defendant without prejudice on November 6, 2014 [Doc. 15].

mainframe computer and instructions on locating the files that Lands' End wanted extracted. Id. ¶ 7; Decl. of Richard J. Derse [Doc. 27-9] ¶ 10; Decl. of David Fischer [Doc. 27-10] ¶¶ 2, 5. Lands' End directed Fischer to extract employee data files using the Genesys software. Defs.' SUMF ¶ 7.

After Fischer returned to Pennsylvania, Lands' End contacted him and instructed him to run additional data file extractions, operating remotely; Lands' End provided Fischer with remote access to its mainframe computer to do so. Id. ¶ 9. Fischer continued running extractions of Lands' End employee data files at Lands' End's request from May 2012 through March 2013, providing the extracted files directly to Lands' End; in March 2013, upon Lands' End's instruction, he stopped running extractions. Id. ¶ 10. Ceridian paid iHouse for the majority of Fischer's work, and Lands' End paid for a portion. Decl. of Andree Frederick [Doc. 27-12] ¶ 8; Pl.'s Resp. to Defs.' SUMF ¶ 15.

In prior litigation, Lands' End, Inc. v. Genesys Software Sys., Inc., No. 13-CV-38-BBC (W.D. Wis.) (the "Wisconsin Litigation"), Genesys claimed that Lands' End used the Genesys software beyond the expiration of the applicable license agreement. Defs.' SUMF ¶ 16. On July 3, 2013, the court held that the license agreement in fact expired on January 19, 2013. The Wisconsin Litigation [Doc. 16-1]. On April 29, 2014, Genesys and Lands' End executed a Confidential

3

Settlement Agreement (the "Settlement Agreement") under which Lands' End agreed to pay $90,000 to Genesys. Id. ¶ 17; Settlement Agreement [Doc. 27-5]. The Settlement Agreement stated, in relevant part:

> 4. Except as otherwise set forth herein, the Parties, intending to be legally bound for themselves, and their respective parents and subsidiaries, release and discharge each other, their past and present principals, officers, directors, employees, agents, attorneys, insurers, Related Entities, parents, subsidiaries, successors, and assigns, from any and all actions, causes of action, claims, covenants, contracts, liabilities, demands, debts, assessments, special assessments, suits, proceedings, damages, and appeals, known or unknown, liquidated or unliquidated, contingent or non-contingent, arising from or pertaining in any way to all events, facts or occurrences from the beginning of the World to the Effective Date of this Agreement. This release is intended to serve and shall serve as a complete and total release of all claims of any kind except for those obligations that are expressly created by this Agreement.
>
> 5. As used in Section 4 hereof, the term "Related Entities" expressly excludes any third party vendor or service provider (e.g., iHouse, Ceridian Corporation, Ceridian HCM, Inc., etc.), any employee of such third parties, or anyone other than the entities and individuals listed above in Paragraph 4, but solely with respect to any release of any claim that Genesys may assert based solely on the acts, errors, or omissions of those third parties and their employees and not based on the acts, errors, or omissions of the entities and individuals listed above in Paragraph 4. It is expressly agreed to and understood by Lands' End that a material aspect to the entry into this Agreement by Genesys is that it has expressly preserved such claims against third party vendors and service providers and their employees. Notwithstanding the release granted in Section 4 hereof, such release shall not apply to any individual who is a former Lands' End employee, if the claim asserted against such individual arose after such individual left Lands' End's employ.

Settlement Agreement ¶¶ 4-5. After the Settlement Agreement was signed, the parties filed a stipulation leading to dismissal of the Wisconsin Litigation. Defs.' SUMF ¶ 19.

## II. PROCEDURAL HISTORY

On August 18, 2014, Genesys filed its complaint against Defendants asserting causes of action for copyright infringement, unfair competition, and common law conspiracy. Compl. On October 24, 2014, Defendant filed a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defs.' Mot. to Dismiss [Doc. 13]. On April 22, 2015, this Court denied the motion to dismiss with respect to the copyright infringement claim but granted the motion to dismiss with respect to the unfair competition and common law conspiracy claims. Order of Apr. 22, 2015 [Doc. 23].

Defendants filed a Motion for Summary Judgment on the sole remaining copyright infringement claim, arguing that the only potential liability to Plaintiff would be based upon the actions of Fischer in his use of the Genesys software, and that the Settlement Agreement's release of any claims against "agents" of Lands' End applies to Fischer's actions in using the Genesys software, which therefore operates to bar Plaintiff's copyright infringement claim. [Doc. 27.]

## III. LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A party seeking summary judgment has the burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions," and cannot be made by the district court in considering whether to grant summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); see also Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999).

If a movant meets its burden, the party opposing summary judgment must present evidence that shows there is a genuine issue of material fact or that the movant is not entitled to judgment as a matter of law. Celotex, 477 U.S. at 324. In determining whether a genuine issue of material fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, "and all justifiable inferences are to be drawn" in favor of that opposing party. Anderson, 477 U.S. at 255; see also Herzog v. Castle

Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999). A fact is "material" only if it can affect the outcome of the lawsuit under the governing legal principles. Anderson, 477 U.S. at 248. A factual dispute is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. Id.

"If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Herzog, 193 F.3d at 1246. But, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper. Matsushita, 475 U.S. at 587.

## IV. DISCUSSION

### A. Applicable Law

The parties dispute whether Georgia or Wisconsin law applies to the issues of contract interpretation relevant to Defendants' motion. Federal courts sitting in diversity jurisdiction are bound to apply the conflict of law rules of the forum state. Grupo Televisa, S.A. v. Telemundo Commc'ns. Group, 485 F.3d 1233, 1240 (11th Cir. 2007) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941)). Therefore, this Court will apply Georgia's conflict of law rules to determine whether the laws of Georgia or Wisconsin will govern the parties' contract dispute.

7

The choice of law rule employed in Georgia to contract disputes is *lex loci contractus*. Johnson v. Occidental Fire & Cas. Co. of North Carolina, 954 F.2d 1581, 1583 (11th Cir. 1992). Under this rule, contracts are "governed as to their nature, validity, and interpretation by the law of the place where they were made, except where it appears from the contract itself that it is to be performed in a State other than that in which it was made, in which case . . . the laws of that Sister state will be applied." Convergys Corp. v. Keener, 276 Ga. 808, 811 n.1 (2003) (citation omitted).

Defendants argue that Wisconsin's substantive law should apply because the Settlement Agreement resolved Wisconsin litigation, this case arose from conduct occurring in Wisconsin, and the Settlement Agreement was intended to be performed in Wisconsin. Defs.' Br. in Supp. of Mot. [Doc. 27-1] ("Defs.' Br.") at 7-9 (citing Gaylor v. Arbor Place, II, LLC, No. 1:13-CV-0068-JEC, 2013 WL 542974, at *2 (N.D. Ga. Sept. 30, 2013)). Plaintiff counters that this is a copyright infringement claim where jurisdiction is based upon federal statutes and, because the Court is not sitting in diversity jurisdiction, Georgia law should apply. Pl.'s Resp. to Defs.' Mot. [Doc. 30] ("Pl.'s Resp.") at 12. Because the release of claims at issue was executed in Wisconsin, Wisconsin law would govern the construction of the Settlement Agreement's release. See Quality Recycling Servs., Inc. v. Page

8

Intern., Inc., No. 11-2694, 2012 WL 2577514, at *3 (W.D. Tenn. July 3, 2012). However, as discussed below, the Court concludes there is no meaningful distinction between the application of Wisconsin or Georgia law to the issue at hand.

## B. Language of the Settlement Agreement

Under either Wisconsin or Georgia law, the plain language of the Settlement Agreement controls where unambiguous. Kernz v. J. L. French Corp., 667 N.W.2d 751, 755 (Wis. Ct. App. 2003) ("When the terms of a contract are plain and unambiguous, we will construe the contract as it stands.") (internal citation omitted); Longstreet v. Decker, 312 Ga. App. 1, 3 (2011) ("The first rule of contract construction is to determine the parties' intent, and if the language is clear the contract shall be enforced according to its clear terms. In fact, no construction is even permitted when the language employed by the parties in the contract is plain, unambiguous, and capable of only one reasonable interpretation.") (internal punctuation and footnote omitted).

The definition of "agency" is not ambiguous under either state's law. Kugler v. LexisNexis Occupational Health Solutions, Inc., 16 F. Supp. 3d 999, 1002 (E.D. Wis. 2014) (holding that the term "agent" included in a settlement release was not ambiguous because "the fact that the term is broad does not make it

9

ambiguous."); Wash. Nat. Ins. Co. v. Mayor and Aldermen of Savannah, 196 Ga. 126 (1943) (citing the Restatement of Agency and the American Law Institute for the definition of agency as "the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other to so act."). The concept of agency refers to a consensual relationship in which one "acts as a representative of or otherwise acts on behalf of another . . . with power to affect the legal rights and duties of the other person." Restatement (Third) of Agency § 1.01 (2006). A critical element of agency is the principal's right to control the agent's actions. "Control is a concept that embraces a wide spectrum of meanings, but within any relationship of agency the principal initially states what the agent shall and shall not do, in specific or general terms." Id.

The term "agents" in the Settlement Agreement's release provision is unambiguous. "[T]he Parties, intending to be legally bound for themselves, release and discharge each other, [and] their . . . agents . . . from any and all actions, causes of action . . . ." Settlement Agreement § 4. Given that there is no evidence in the record that anyone other than Fischer accessed the Genesys software,[3] if the

---

[3] Plaintiff argues that Andree Fredrick (whose testimony supports Defendants' contention that Fischer is the only Lands' End-related individual who accessed the software) testified inaccurately in her deposition from the Wisconsin litigation

10

Court concludes that Fischer was acting as an agent of Lands' End, Defendants should be released from liability.

Section five of the Settlement Agreement modifies Section four's definition of "Related Entities" to "exclude any third party vendor or service provider (e.g., iHouse, Ceridian Corporation, Ceridian HCM, Inc., etc.) . . . ." Settlement Agreement § 5. Plaintiff states that it was a material aspect of the Settlement Agreement that Defendants were not released, and were excluded by name. Pl.'s Resp. at 13.

However, this section expressly limits Genesys' ability to assert only those claims against iHouse, Ceridian, and other third parties "based solely on the acts, errors, or omissions of those third parties and their employees and not based on the

---

regarding when she believed Fischer's last use of the software occurred (which is not at issue in the pending litigation) and, as such, the Court should not permit Defendants to rely on her testimony. Pl.'s Resp. at 13-14. It argues that, other than Fredrick's testimony, Defendants' statements regarding other people's use of the software were not made based on personal knowledge (stating, instead, that each person did not, himself, use the software and he was aware of no other use). Id. at 15-17. However, as Defendants point out, Plaintiff provides no facts to contradict them. Defs.' Reply at 4-5. The nonmovant "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 257. Further, the statements regarding usage were made on personal knowledge of the employees that they were unaware of any other access to the software. Therefore, the Court concludes there is no genuine issue of material fact regarding whether any additional individuals accessed the software.

acts, errors, or omissions of the entities and individuals listed above in Paragraph 4." Settlement Agreement § 5. As noted, the entities listed in section four include agents of Lands' End. Defendants state that their proposed interpretation does not render Section five meaningless because if iHouse or Ceridian had used the Genesys software for another purpose, the use would not have been directed by Lands' End and would have been outside the scope of agency; thus, the carve out would apply. Defs.' Br. at 16.

Defendants further contend that, because Fischer is the only Defendant-connected party who actually used the Genesys software, the only potentially-viable theory of liability against the other Defendants would involve liability for Fischer's use. Defs.' Br. at 18. Thus, they contend, any claim against the Defendants must fail because it would have been based on Fischer's actions and was thereby also released by the Settlement Agreement. Id.

The Court agrees with Defendants. Fischer's use of the software was at the request, and for the benefit, of Lands' End. If Ceridian or iHouse had used the software for any other purpose, section five would allow a cause of action for such usage. Here, however, the Court concludes as a matter of law that the claims here are based on "acts, errors, or omissions" of an agent of Lands' End, namely, Fischer, and the section five exception does not apply.

## C. Agency

Defendants contend that iHouse, through its contractor David Fischer, was in an agency relationship with Lands' End while using the Genesys software and that Fischer's work in extracting employee data was within the scope of that agency relationship. Defs.' Br. at 11-15. Specifically, Defendants assert that Lands' End "requested and controlled" Fischer's work and provided him credentials to access their computer and directions to locate the files to extract. Id. at 11. Fischer extracted the data as instructed, provided the files to Lands' End, stopped running extractions when Lands' End instructed him to do so, and used the software only to perform tasks at Lands' End's request. Id. at 11-12. Thus, Defendants argue, Fischer and iHouse were acting as Lands' End's agents. Id. at 12 (citing Insolia v. Philip Morris, Inc., 31 F. Supp. 2d 660, 671 (W.D. Wis. 1998); Select Creations, Inc. v. Paliafito American, Inc., 911 F. Supp. 1130, 1151 (E.D. Wis. 1995)). They further argue that Fischer was an independent contractor, and that Ceridian identified and retained iHouse to provide that work for Lands' End and split the cost of iHouse's services with Lands' End (and that any

13

characterization of Fischer and iHouse as subagents of Ceridian would have no legal significance).[4] Id. at 12-13.

Defendants contend that Lands' End used Ceridian to identify and retain a consultant (Fischer), communicated directly with Fischer, directed and controlled his use of the Genesys software, and both requested iHouse's retention and directly paid a portion of the cost of Fischer's work. Id. at 13-14. They analogize the case to Wagner v. Hicks, 163 Wis. 2d 1094 (Wis. Ct. App. 1991), in which the court granted summary judgment to the defendant because he had acted as an agent of a company the plaintiffs earlier had sued and settled with, reaching an agreement that released the parties' agents, and noted that independent contractors were agents.

Plaintiff asserts that Defendants could not have been agents of Lands' End because their actions were unlawful, though it cites no law for this proposition.[5]

---

[4] A subagent is "appointed by an agent to perform functions that the agent has consented to perform on behalf of the agent's principal and for whose conduct the appointing agent is responsible to the principal." Restatement (Third) of Agency § 3.15 (2006). "[W]here the agent is authorized to appoint a subagent, the relation of principal and agent exists between the principal and the subagent. That is, the subagent may be the agent of the principal if he is in actual control of the business and the principal knows of his appointment, or knows that his appointment is necessary, and the agent has authority to employ him." Stanford v. Otto Niederer & Sons, Inc., 178 Ga. App. 56, 57 (1986) (quoting 3 Am. Jur. 2d § 7, p. 423).

14

Pl.'s Resp. at 13, 17. It argues that, although Lands' End paid a portion of the expense for data extraction to iHouse, Ceridian paid the majority of the expense and, thus, the Court should infer Fischer was not an agent of Lands' End. Id. at 19-20.

The Court concludes that Fischer was an agent of Lands' End. Ultimately, Lands' End directed and controlled Fischer's access of the software, and Fischer provided the results of his access directly to Lands' End. Further, because Plaintiff has provided no evidence to contradict Defendants' testimony that no one other than Fischer used the software for these purposes, Defendants' only liability would have been for Fischer's actions. Section four of the Settlement Agreement released Fischer, as an agent of Lands' End, from liability based on his use of the Genesys software. Therefore, Defendants cannot be held liable in this case based on Fischer's use of the Genesys software.

---

[5] In actuality, it is relatively common for a principal to be assumed liable for its agents' allegedly-unlawful acts. See, e.g., Meyer v. Holley, 537 U.S. 280, 286 (2003) ("And in the absence of special circumstances it is the corporation, not its owner or officer, who is the principal or employer, and thus subject to vicarious liability for torts committed by its employees or agents.").

15

## V. CONCLUSION

For the foregoing reasons, Defendants Ceridian Corporation, Ceridian HCM, Inc., CSIG Management, Inc., and William Snyder's Motion for Summary Judgment [Doc. 27] is **GRANTED**.

As there are no remaining claims pending, the Clerk is directed to close this case.

**IT IS SO ORDERED** this 25th day of January, 2016.

_/s/ Mark H. Cohen_
MARK H. COHEN
United States District Judge